# 2001 DTA 110

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL V

ISABELITA MATEO RODRIGUEZ Y FERNANDO REY
Querellantes-Recurridos

v.

FRANCISCO ORTIZ H/N/C PACO TRANSMISSION
Querellado-Recurrente

Núm. KLRA-99-00598

San Juan, Puerto Rico, a 26 de enero de 2001

Panel integrado por su Presidente, el Juez Ramón Negrón Soto,
y los Jueces Antonio J. Negroni Cintrón y Jorge Segarra Olivero

Negroni Cintrón, Juez Ponente

**TEXTO COMPLETO DE LA RESOLUCION**

El 22 de septiembre de 1999, Francisco Ortiz H/N/C Paco Transmission, ("*Ortiz*") presentó el recurso de revisión administrativa que nos ocupa con el fin de que revoquemos la Resolución dictada el 24 de agosto de 1999 por el Departamento de Asuntos del Consumidor ("*DACO*"). Mediante ésta, ordenó al Sr. Ortiz que le pagara a los recurridos, Isabelita Mateo Rodríguez ("*Sra. Mateo*") y Fernando Rey ("*Sr. Rey*"), la cantidad de veintiún mil doscientos veintiséis dólares con noventa y centavos ($21,226.92) por concepto de reparación defectuosa, pago de grúa, la reparación de los daños del vehículo, y sus sufrimientos y angustias mentales.

Expedimos el auto solicitado y le concedimos término a los recurridos para que presentaran su alegato. Sometido éste, resolvemos.

**I**

Los hechos pertinentes a la controversia que culminó con el dictamen apelado, surgen de la resolución que emitió el DACO, después de celebrada la vista administrativa correspondiente. Estos son los siguientes:

"*1. El 26 de marzo de 1998, los recurridos contrataron los servicios del Sr. Ortiz para que reparara la la transmisión de un vehículo Isuzu Rodeo, 4 x 4, de 1992, de su propiedad, por el que pagaron la cantidad de $1,215.00. El Sr. Ortiz otorgó una garantía de 90 días.*

*2. El mismo 26 de marzo de 1998, la Sra. Mateo regresó al taller del Sr. Ortiz el vehículo por ruidos en transmisión en el que permaneció hasta el 31 siguiente.*

*3. El 1 de abril de 1998 el vehículo presentó "liqueo" de aceite por el área del "crank" y respiradero. El Sr. Ortiz procedió a ajustarle la tapa del "crank".*

*4. El 17 de abril siguiente y en el área de Caguas, el vehículo se incendió por la varilla de medir el aceite de transmisión. El Sr. Rey apagó el fuego. El incidente se consignó en el Informe Policíaco Núm. 160.*

*Debido a ello, el Sr. Rey utilizó los servicios de "Remolque Vitín" para regresar el vehículo de Caguas a Coamo, pagando la cantidad de $150.00. Llevó el vehículo nuevamente al taller del Sr. Ortiz.*

*5. El 2 de mayo de 1998, el Sr. Ortiz devolvió el vehículo en cuestión, alegadamente, reparado. El 4 siguiente, sin embargo, el vehículo emitió chispas por los cables, lo que surge del Informe Policíaco Núm. 188.*

*6. El 1 de junio de 1998, los recurridos presentaron una querella ante el DACO contra el Sr. Ortiz por reparación defectuosa.*

*7. El 9 de julio de 1998, el técnico automotriz de ese Departamento, el Sr. Marcos Martínez, realizó una inspección del vehículo y encontró que la transmisión no presentaba condición anormal alguna. No obstante, al*

*inspeccionar el vehículo por el área de abajo, encontró un pequeño "liqueo" de aceite de transmisión por el "carter". El Sr. Rey se opuso a que el Sr. Ortiz interviniera nuevamente con la unidad.*

*8. El 17 de septiembre de 1998 y según el Informe Policíaco Núm. 322, en la autopista del área de Guayama y cuando el Sr. Luis Abrahante del DACO conducía el vehículo objeto de la querella, para inspeccionarlo nuevamente, salió humo de la parte delantera del vehículo y se encendió. Como consecuencia de este suceso, el Sr. Rey tuvo que ser llevado al Hospital San Cristóbal por sufrir vómitos, ansiedad, dolor de cabeza y pecho, siendo dado de alta el mismo día.*

*9. En esa misma fecha, el Sr. Abrahante realizó reinspección del vehículo en cuestión y preparó el siguiente informe:*

*"Durante la prueba se prendió bombilla del "check transmission". Procedió a estacionar el vehículo y salió humo negro de la parte de abajo y área cercana a la parte del motor. Vehículo botó gran cantidad de aceite. Piezas se dañaron: Cablería motor, batería, guardalodo, bonete, casco ignición, cablería bujías, manga presión acondicionador de aire, correa del "power steering", correa compresor acondicionador de aire, correa alternador, manga del respiradero del gorro del carburador, bomba frenos, canister agua radiador, manga acondicionador de aire se tostó, aceite que boto (sic) el vehículo era de transmisión."*

*10. El Dr. Roberto A. Capestany, médico del Sr. Rey, certificó que éste está en tratamiento desde "6-11-93 para condición emocional estabilizada y que dicha condición se ha deteriorado desde el accidente". (sic)*

*11. El 21 de octubre de 1998, el Sr. Rey sometió ante el DACO un estimado de reparación realizado por Taller Rey De Jesús por la cantidad de $14,861.92.*

*12. El 22 de octubre de 1998, se enmendó la querella para incluir como parte a la Cooperativa de Seguros Múltiples."* ■

De rigor es señalar, además, que los recurridos solicitaron sesenta mil dólares ($60,000.00) por daños irreparables a su vehículo y angustias mentales. A la vista administrativa celebrada el 4 de febrero de 1999, comparecieron los recurridos representados legalmente, el técnico del DACO y el Sr. Ortiz. En la vista se admitieron como evidencia varios documentos; entre ellos, el certificado médico mencionado en el inciso 10 y el estimado de piezas y reparación mencionado en el inciso 11. Las copias de estos documentos no le fueron entregadas, ni mostradas al Sr. Ortiz.

En la resolución que el DACO emitió, concluyó que el Sr. Ortiz realizó una reparación defectuosa del vehículo de los recurridos y lo condenó a pagarle a éstos las siguientes sumas:

*"$ 1,215.00 por reparación defectuosa*

*$ 150.00 gastos de grúa*

*$14,861.92 reparación de daños al vehículo*

*$ 5,000.00 sufrimientos y angustias mentales"*

Inconforme con este dictamen y en su recurso, el Sr. Ortiz le imputa al DACO la comisión de los siguientes errores:

*"...imponer responsabilidad al querellado por el incendio del vehículo de los querellantes sin haber hecho una determinación de hecho respecto a causa próxima y sin que exista evidencia suficiente en el récord para así concluirlo.*

*...conceder una partida para reparación del vehículo que supera el valor de dicho vehículo en el mercado, habiendo quedando [sic] el mismo, luego del incendio, completamente inservible y al aceptar prueba inadmisible sobre el costo de reparación, cuando ni la persona que realizó el estimado compareció a declarar, ni se cualificó como perito en la materia.*

*...aceptar el certificado médico como prueba de los daños y angustias mentales cuando el médico que alegadamente certificó las angustias mentales no compareció a declarar.*

*...admitir evidencia sin que copia de la misma le fuera suministrada al querellado, ni antes, ni durante la misma, y sin que le fuera mostrada al querellado durante la vista para su verificación.*

*...conceder una partida de $5,000.00 para daños y angustias mentales y al imponer al querellado la obligación de devolver la suma de $1,215.00 por la reparación defectuosa de la transmisión."*

Luego de varios trámites procesales, el peticionario presentó un proyecto de exposición narrativa de la prueba oral. Le requerimos a los recurridos que presentaran sus objeciones o enmiendas al mismo, pero no lo hicieron, por lo que adoptamos mediante resolución al efecto, el proyecto sometido como la exposición narrativa de la causa. Los recurridos no se opusieron.

Examinada la petición, sus apéndices y la exposición narrativa de la prueba, estamos en condiciones de resolver. Por los fundamentos que pasamos a exponer, debemos modificar en parte la resolución recurrida y devolver la causa al DACO para que actúe conforme a lo que aquí resolvemos.

## II

Las decisiones administrativas gozan de una presunción de regularidad y corrección y nuestra intervención con las mismas está limitada por la ley y la jurisprudencia. Ley Núm. 170 del 12 de agosto de 1988, conocida como Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A., sec. 2174 *et seq.*; *Misión Industrial de P.R. v. Junta de Planificación,* Op. de 30 de junio de 1998, **98 J.T.S. 79**, a pág. 1159; *Misión Industrial de P.R. v. Junta de Planificación,* Op. de 21 de marzo de 1997, **97 J.T.S. 34**, a la pág. 728; *Maisonet Felicié v. F.S.E.,* Op. de 30 de diciembre de 1996, **96 J.T.S. 169**, a la pág. 454, *Fac. Soc., Inc. v. C.E.S.,* 133 D. P.R. 521, 532-533 (1993); *Henríquez v. C.E.S.,* 120 D.P.R. 194, 210 (1987); *M. & B. S. v. Departamento,* 118 D.P.R. 317, 331 (1987); *Murphy Bernabé v. Tribunal Superior,* 103 D.P.R. 692, 699 (1975).

En armonía con lo anterior, las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto, por lo que el ejercicio de nuestra función revisora está limitado a determinar si la agencia actuó arbitraria, ilegal o tan irrazonablemente que su actuación constituyó un abuso de discreción. *Misión Industrial de P.R. v. Junta de Planificación, supra,* a la pág. 1160 (1998); *Misión Industrial de P.R. v. Junta de Planificación, supra,* a la pág. 728 (1997); *Reyes Salcedo v. Policía de P.R.,* Op. de 13 de mayo de 1997, **97 J.T.S. 58**; *Fuertes y otros v. A.R.P.E.,* 134 D.P.R. 947, 953 (1993); *Murphy Bernabé v. Tribunal Superior, supra.* Se cumple cuando se encuentra una base racional en el récord administrativo para las conclusiones de la agencia sin sustituir el criterio del tribunal por el de la agencia administrativa. *Misión Industrial de P.R. v. Junta de Planificación, supra,* a la pág. 1160; *Metropolitana, S.E. v. A.R.P.E.,* 138 D.P.R. 200, 212-213 (1995); *Hilton Hotels Intl. v. Junta de Salario Mínimo,* 74 D.P.R. 670, 703 (1953).

Lo anterior impone en quien impugna la decisión administrativa, el deber de probar que se ha actuado en forma arbitraria, caprichosa o en clara violación de los derechos constitucionales fundamentales. Por ello, le corresponde el peso de establecer en su recurso que no existe base racional que sostenga la decisión administrativa que es objeto deimpugnación. *Catalytic Ind. Mant. Co. v. F.S.E.,* 121 D.P.R. 98, 102 (1988); *Henríquez v. Consejo Educación Superior, supra.*

A tono con esta perspectiva, el Reglamento de este Foro dispone que se podrá expedir un auto de revisión,

si el remedio y la disposición de la orden, resolución o decisión recurrida, a diferencia de sus fundamentos, son contrarias a derecho, o producto de una actuación arbitraria, ilegal o irrazonable; si la decisión recurrida no está apoyada por evidencia sustancial, y si la expedición del auto evita el fracaso de· la justicia. 4 L.P.R.A. Ap. XXII-A, R. 66.

A la luz de esta normativa, examinemos los errores señalados.

### III

El primer error levantado cuestiona la imposición de responsabilidad al Sr. Ortiz, aduciendo que en la resolución no se determinó que la causa próxima del incendio fue la reparación defectuosa del vehículo que se le imputa a éste. No tiene razón.

Según los hechos determinados e incluidos en la resolución recurrida, durante la segunda inspección del vehículo realizada por el DACO, se sometió éste a una prueba de carretera. Estando presente el Sr. Rey, el Sr. Ortiz, técnico del DACO, el Sr. Eleuterio Mateo y su hijo, el vehículo se incendió; luego de·que se iluminara el· letrero "*check transmission*" y botara el aceite de transmisión.

Más aún, durante la vista, el técnico del DACO, el Sr. Abrahante, declaró, a preguntas de la representación legal de los recurridos, que "*conforme a su entender, el incendio fue provocado por caer aceite de la transmisión en el sistema de escape... que debió haber estado cayendo una buena cantidad de aceite... que eso es lo que considera condiciones anormales*". ■ Afirmó, además, que consideraba que lo ocurrido se debió a un defecto en la transmisión.

No es difícil percatarse que, con esta prueba, el DACO podía concluir correctamente que "*como consecuencia de la reparación defectuosa de la transmisión, el vehículo objeto de la querella por parte del querellado, Francisco Ortiz, h/n/c Paco Transmission, el mismo sufrió un incendio causando daños considerables al vehículo...*". ■ La prueba presentada ante el foro administrativo es circunstancial, pero suficiente para avalar la conclusión. No fue refutada por el Sr. Ortiz. En fin, la conclusión de que la reparación inadecuada y defectuosa de la transmisión del vehículo de los recurridos fue la causa adecuada o próxima que provocó que durante la prueba de carretera éste se incendiara y resultara inservible, era correcta también en derecho.

La causa próxima de un daño es aquélla que, de ordinario, produce un resultado según la experiencia general. Es aquélla que produce un daño que era de esperarse en el curso normal de los eventos. *Miranda v. E.L. A.,* 137 D.P.R. 700 (1994).

Considerados todos estos elementos de juicio, el recurrente no ha demostrado que el DACO haya abusado de su discreción, o que haya sido arbitrario o irrazonable en su conclusión. Concluimos que este error, no fue cometido.

### IV

Mediante el segundo error, el recurrente argumenta que el DACO incidió al concluir que como el auto fue pérdida total, procedía que se compensara a los recurridos por una suma igual al monto de la reparación total del vehículo. Sostiene, por el contrario, que debió compensársele utilizando el valor en el mercado de una Isuzu Rodeo, 4 x 4, de 1992, a la fecha del accidente. Tiene razón.

Cuando un accidente ocasiona la pérdida total de un vehículo, el perjudicado tiene derecho tan sólo a recobrar el valor del vehículo en el mercado al momento de la colisión; no tiene el derecho a la depreciación, ni a la pérdida de uso. *Torres v. González,* 68 D.P.R. 47 (1947). Véanse, además, *Figueroa Pizarro v. Western Assurance Co.,* 87 D.P.R. 152 (1963); *Ortiz Rivera v. Aetna Life Ins. Co.,* 89 D.P.R. 640 (1963); *Rodríguez v. Martínez, Jr.,* 55 D.P.R. 59, 64; *Colón v. Shell Co.* (P.R.) Ltd., 55 D.P.R. 592, 628.

El error fue cometido y procede que el DACO determine cuál es ese valor.

## V

Como tercer señalamiento de error, el recurrente cuestiona la admisibilidad de documentos durante la vista celebrada; a saber, el certificado médico, el estimado del hojalatero y la factura por servicio de grúa. No compartimos esa opinión.

La sección 3.13(e) de la Ley Núm. 170 de 12 de agosto 1998, ("*L.P.A.U.*"), 3 L.P.R.A. sec. 2163 (e), dispone que las reglas de evidencia no son de aplicación en los procedimientos adjudicativos que se celebran en el foro administrativo. Sin embargo, la L.P.A.U. establece que los principios fundamentales de evidencia podrán aplicarse si su objetivo es lograr la solución rápida, justa y económica del procedimiento. En particular, el incisio (c) de la mencionada sección dispone que el "*funcionario que presida la vista podrá excluir aquella evidencia que sea impertinente, inmaterial, repetitiva o inadmisible por fundamentos constitucionales o legales basados en privilegios evidenciarios reconocidos por los tribunales de Puerto Rico*".

Ello así, resulta inapropiada la argumentación del recurrente de que estos documentos no fueron autenticados porque los autores no fueron testigos, ni declararon en la vista. Los documentos eran evidencia pertinente admisible, ya que no constituian evidencia privilegiada, repetitiva o inmaterial. Tampoco fueron objetados por el Sr. Ortiz.

La alegación particular de que el certificado médico no demuestra que el Sr. Ortiz realmente sufrió daños, ya que en el mismo sólo se consigna que la situación emocional que padecía desde 1993 se empeoró al presenciar el incendio de su vehículo, no nos persuade. Ese documento no fue la única prueba presentada para establecer los daños sufridos por los recurridos. Tanto el Sr. Rey como el testigo, Sr. Eleuterio Mateo, declararon sobre la reacción del primero cuando presenció el incendio y la necesidad de ser llevado a un hospital para ser atendido. ■

Por lo antes expuesto, concluimos que el tercer error no fue cometido.

## VI

Como cuarto error, el recurrente señala que el DACO actuó incorrectamente al aceptar evidencia en la vista administrativa a la cual éste no tuvo acceso, ni antes, ni durante la celebración de la misma. Argumenta que como no contó con asistencia legal durante el proceso y no es conocedor del derecho, no pudo objetar la admisibilidad de la prueba. Sostiene, por ello, que el Sr. Ortiz no pudo defenderse adecuadamente y que se le violentó su derecho a un debido procedimiento de ley. No le asiste la razón.

Es cierto que el recurrente no tuvo acceso a esa prueba, pero no consta en el récord que haya solicitado examinarla o que la Oficial Examinadora le negara acceso a ella. Ciertamente conoció de su existencia y ante su presencia se presentó como prueba. Por otro lado, el recurrente optó por asistir sin representación legal a la vista, aun cuando se le advirtió que podía comparecer con ésta ■ y que debía traer toda la evidencia pertinente a su caso. ■

El recurrente no alega que las notificaciones no fueron recibidas. Tampoco niega que previo a la vista, recibió el informe del técnico del DACO, Sr. Abrahante, en el cual éste concluyó que el aceite de la transmisión "*al entrar en contacto con el sistema de escape ("bajante") produjo la combustión y, por ende, se quemaron las piezas que se detallaron anteriormente*". ■ El recurrente fue notificado del mismo y del tiempo que tenía para objetarlo. No lo hizo.

Finalmente, surge de la Exposición Narrativa de la Prueba que el recurrente tuvo la oportunidad y declaró en la vista, ofreciendo su versión de los hechos, aunque no presentó evidencia adicional. Aunque mencionó la existencia de un folleto de los fabricantes que explicaba el sistema de las vías de aceite de transmisión del

vehículo en cuestión, no lo produjo en la vista como prueba a su favor.

El error tampoco fue cometido.

## VII

Mediante el quinto error, el recurrente argumenta que no debió condenársele a reembolsar el pago realizado por los querellantes por la reparación defectuosa y a resarcirle a los recurridos sus sufrimientos y angustias mentales. Sostiene que al no llevar a reparar el vehículo, después de la primera inspección realizada por el técnico del DACO, en la que se le informó que existía un pequeño "*liqueo*" de aceite de transmisión, el recurrente actuó en contravención a la doctrina de mitigación de daños. Veamos.

Conforme dispone el artículo 1054 del Código Civil, 31 L.P.R.A. sec. 3018, quedan sujetos a la indemnización de los daños y perjuicios causados los que incurren en negligencia o incumplan el tenor de la obligación. La doctrina de mitigación de daños, por su parte, postula el deber que tiene una persona que sufre perjuicios de adoptar aquellas medidas razonables y pertinentes, y a su alcance, tendentes a reducir el monto de los mismos. *Cía. Fomento Industrial v. León*, 99 D.P.R. 633, 647 (1971). La doctrina está predicada en la razonabilidad de la conducta del demandante al momento de enfrentarse a una situación crítica. *Id.*, pág. 646. En esencia y por su propia definición, su aplicabilidad presupone la existencia y realidad de un daño, pues de lo contrario, nada habría que mitigar.

Ahora bien, la cuestión de si el que sufre daños cumplió con su deber de mitigarlos, hay que determinarla a base de la situación prevaleciente al momento en que surgió el problema. Si el reclamante escogió un curso de acción razonable, no incumple dicho deber por el hecho de que *a posteriori* se estime que otro curso de acción pudo haber resultado favorable para la persona a la que se le reclama. *Id.*

Aunque la resolución recurrida no atiende este asunto, la prueba que surge de la exposición narrativa no revela que en este caso los recurridos tuvieran que tomar medidas especiales para evitar que los daños sufridos por ellos, debido a la reparación defectuosa efectuada por el recurrente, se tornaran en unos graves que provocara la pérdida total del auto el 17 de septiembre de 1998. La negativa de los recurridos a llevar el vehículo por tercera vez al taller del recurrente luego de la primera inspección del DACO, en la cual se determinó que existía un pequeño derrame de aceite de transmisión (9 de julio de 1998), era razonable y lógica, estando pendiente la adjudicación de la querella ■ y dado el hecho de que en dos ocasiones antes el Sr. Ortiz había fallado en resolver el problema.

Aunque de la prueba presentada en la vista no surge que los recurridos llevaran el vehículo a otro taller o mecánico para que fuera reparado, el vehículo fue inspeccionado dos veces por el DACO, sin indicio alguno de que tuviera que ser detenido para evitar que se incendiara. Ello así, los recurridos actuaron razonablemente.

En cuanto a la partida por sufrimientos y angustias mentales, la exposición narrativa de la prueba demuestra que los recurridos presentaron prueba para avalar ese remedio. Así, pues, el DACO no abusó de su discreción o actuó de forma irrazonable o arbitraria al conceder compensación por ello.

## VIII

Por los fundamentos antes expuestos, confirmamos la determinación del DACO referente a que el vehículo de los recurridos fue defectuosamente reparado por el recurrente y que, debido a ello, los recurridos tienen derecho a que el recurrente le devuelva el precio que le pagaron para reparar la transmisión y los gastos de grúa, y que les compense por sus sufrimientos morales.

No obstante y toda vez que el DACO erró al concederle a los recurridos una compensación por la pérdida total del vehículo, a base del costo de reparación, se devuelve la causa a dicho Foro para que, a su discreción, reciba prueba y determine el valor en el mercado del vehículo a la fecha del incendio, a los fines de ordenarle al

recurrente que compense a los recurridos por una suma igual a ese valor.

Lo acordó el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General

**ESCOLIOS 2001 DTA 110**

**1.** Véanse Determinaciones de Hechos, págs. 1-3, Apéndice de la Solicitud de Revisión.

**2.** Véase pág. 15 de la Exposición Narrativa de la Prueba Oral.

**3.** Véase pág. 4 del Apéndice, Solicitud de Revisión.

**4.** Véase Determinación de Hechos número 10, pág. 2 del Apéndice, Solicitud de Revisión.

**5.** Véase Notificación y Citación, pág. 10 del Apéndice, Solicitud de Revisión.

**6.** *Id.*

**7.** Véanse págs. 18 y 19 del Apéndice, Solicitud de Revisión.

**8.** Véase Determinación de Hechos número 9, pág. 2 del Apéndice, Solicitud de Revisión.